J-A18032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM LOCKMAN AND KATHLEEN LOCKMAN, His Wife, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| BERKSHIRE HILLS ASSOCIATES, L.P., THE SOLOMON ORGANIZATION, LLC, SOLOMON MANAGEMENT, PENDELTON REALTY CORP., BERKSHIRE HILLS ASSOCIATES, LLC, | : | |
| | : | |
| Appellees | : | No. 2094 MDA 2014 |

Appeal from the Order entered on November 10, 2014
in the Court of Common Pleas of Berks County,
Civil Division, No. 13-00023

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 07, 2015**

William Lockman ("Mr. Lockman") and Kathleen Lockman ("Mrs. Lockman") (collectively, "the Lockmans") appeal from the Order granting summary judgment against them and in favor of Berkshire Hills Associates, L.P., The Solomon Organization, LLC, Solomon Management, Pendleton Realty Corp., and Berkshire Hills Associates, LLC (collectively, "Defendants"). We affirm.

In its February 6, 2015 Opinion, the trial court described the facts and relevant procedural history underlying the instant appeal as follows:

> On January 26, 2011, at around 8:15 a.m.[, Mr. Lockman] left his apartment at Berkshire Hills Apartments ["Berkshire"], in Sinking Spring, PA, and walked with winter boots from his

personal sidewalk onto the common sidewalk to get to his car. [Mr. Lockman] had cleared his personal sidewalk of snow and ice that same morning[,] and put rock salt on the area. [Mr. Lockman] testified that upon walking onto the common sidewalk, he observed that it wasn't cleared of ice from a previous storm and a light coating of snow from the storm currently occurring. [Mr. Lockman] also testified that there was still a light snow falling at the time of the incident. [Mr. Lockman] testified that he had previously walked over the ice on the common sidewalk from a previous storm out of necessity, but had not made any complaints to anybody about that ice. [Mr. Lockman] also testified that he had not fallen when walking over that ice. [Mr. Lockman] did not call [any representative of Defendants] that day to address the common sidewalk maintenance before the incident.

[Mr. Lockman's] car was at least five parking lot spaces from his apartment door, and because he noticed [that] the common sidewalk wasn't cleared, he was taking ginger steps on the common sidewalk. [Mr. Lockman] then fell on a particular patch of ice he did not see before he fell. [Mr. Lockman] further testified that he did not fall in relation to any cracks or unevenness in the sidewalk itself. After falling, [Mr. Lockman] did look back and see a patch of ice, and it appeared to him to be the one that he fell on. [Mr. Lockman] described the dimensions of the ice as approximately six inches long, in an irregular but somewhat circular patch, less than an inch thick.

Trial Court Opinion, 2/6/15, at 2.

On March 22, 2013, the Lockmans filed a two-count Civil Complaint against Defendants alleging negligence and loss of consortium. Defendants filed an Answer and New Matter, to which the Lockmans responded with an Answer to New Matter. Discovery commenced and, at the close of discovery, Defendants filed a Motion for Summary Judgment. Defendants' Motion asserted that the "hills and ridges" doctrine bars recovery by the Lockmans. After the parties filed briefs, and the trial court heard oral

argument on the Motion, the trial court entered an Order granting summary judgment in favor of Defendants and against the Lockmans. Thereafter, the Lockmans filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

The Lockmans now present the following claim for our review:[1]

Whether the [t]rial [c]ourt abused its discretion when it granted summary judgment in favor of [Defendants] and dismissed [the Lockmans'] cause[s] of action?

Brief for Appellants at 4.

Initially, we observe our standard of review:

A court … may grant summary judgment only when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. The appellate court views the record in the light most favorable to the non-moving party and considers whether an error of law or abuse of discretion has occurred.

… [T]he questions of whether there are material facts in issue[,] and whether the moving party is entitled to summary judgment[,] are matters of law. The abuse-of-discretion aspect has relevance only with regard to matters which lie within the discretion of the court of original jurisdiction, such as a subsidiary evidentiary ruling associated with the award.

*Alderwoods (Pa.), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 34 n.5 (Pa. 2014) (citations omitted).

---

[1] Although the Lockmans' Statement of Questions Involved identifies two claims, they are duplicative. The Argument section of the Lockmans' brief addresses only the claim stated above.

J-A18032-15

The Lockmans claim that the trial court improperly concluded, as a matter of law, that the "hills and ridges" doctrine bars recovery. Brief for Appellants at 9-10. According to the Lockmans,

> [t]here remains material issues of fact, namely: whether the ice described by [Mr. Lockman] was of a size and character to constitute a danger to pedestrians; whether [] Defendants had actual or constructive notice of the condition; and whether the snow and ice existing on the sidewalk in front of Mr. Lockman's apartment caused him to fall.

*Id.* at 10.

The Lockmans rely upon the testimony of Lauren Harold ("Ms. Harold"), the property manager at Berkshire. According to the Lockmans, Ms. Harold indicated that there were daily inspections for ice and snow. *Id.* at 12. The Lockmans argue that this testimony is sufficient to impute that Defendants had constructive notice of the ice and snow, which remained on the sidewalk in front of Mr. Lockman's apartment. *Id.* Ms. Harold explained that during a large storm, Defendants' employees would undertake snow removal after three inches of snow had fallen. *Id.* In the event of a smaller storm, Defendants' employees waited until the snowfall ended. *Id.* According to the Lockmans, Ms. Harold acknowledged that, during her time as property manager, she had received at least ten complaints regarding patches of ice on the sidewalks and parking lot. *Id.* at 10.

Finally, the Lockmans refer to Ms. Harold's testimony that she personally inspected the area of Mr. Lockman's fall after the incident, and the area was free of ice and snow. *Id.* at 11. According to the Lockmans,

Ms. Harold's testimony conflicts with that of Mrs. Lockman, who testified that the day following Mr. Lockman's accident, she observed that snow and ice remained at the location of the fall. *Id.* This testimony, the Lockmans argue, creates an issue of fact regarding the condition of the sidewalk at the time of Mr. Lockman's fall. *Id.*

Defendants counter that the Lockmans failed to demonstrate that the "hills and ridges" doctrine is inapplicable. Brief for Appellees at 14. According to Defendants, the Lockmans presented no evidence establishing (1) that Defendants had permitted ice to accumulate in ridges or elevations "of such size and character as to unreasonably obstruct travel on the subject sidewalk area;" (2) that Defendants had actual or constructive notice of the ice patch that allegedly caused Mr. Lockman's fall; and (3) that an issue of fact existed as to the cause of Mr. Lockman's fall. *Id.* at 15.

The hills and ridges doctrine is "a long standing and well entrenched legal principle that protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." ***Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.***, 828 A.2d 1114, 1116 (Pa. Super. 2003) (quoting ***Morin v. Traveler's Rest Motel, Inc.***, 704 A.2d 1085, 1087 (Pa. Super. 1997)).

> [T]he doctrine of hills and ridges provides that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climactic

conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

*Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 526 (Pa. Super. 2006) (citation omitted).

However, proof of "hills and ridges" is necessary only when it appears that the accident occurred at a time when general slippery conditions prevailed in the community. *Tonik v. Apex Garages, Inc.*, 275 A.2d 296, 298 (Pa. 1971). Accordingly, a prerequisite to the application of the "hills and ridges" doctrine is a finding of generally slippery conditions, as opposed to isolated icy patches. *Morin*, 704 A.2d at 1088.

Here, the uncontradicted evidence established the existence of generally slippery conditions at the time of Mr. Lockman's fall. Mr. Lockman testified that immediately before his fall, "I saw a light coating of snow from the storm that was currently occurring." N.T., 3/10/14, at 20. Mr. Lockman then confirmed that "[t]here was a light snow falling at the time." *Id.* at 21.

The Defendants also presented evidence of the weather conditions at the time of the incident, through a Report prepared by Keith Arnensen ("Arnensen"), a meteorologist. Defendants' Reply Brief in Response to Plaintiffs' Answer to Motion for Summary Judgment, Exhibit B. Arnensen's Report described an initial "significant snowfall event" on January 11-12, 2011, producing 4.6 inches of snow in Lehigh Valley, Pennsylvania, and 3.6 inches in Harrisburg, Pennsylvania. *Id.* at 1. The Report states that on

January 17, 2011, snow began falling around 11:00 p.m. *Id.* Through the morning of January 19, 2011, the snow changed to sleet, then freezing rain, and then all rain, changed to sleet, then freezing rain, and finally changed to all rain. *Id.* Snow from this event totaled 1.9 inches in Lehigh Valley, and 2.8 inches in Harrisburg. *Id.* at 2. The Report described a "minor snow event," which took place on January 25, 2011, followed by a major snowstorm taking place on January 26-27, 2011. According to the Report, snow on unplowed and untreated surfaces at 7:00 a.m. on January 26, 2011, the day of Mr. Lockman's fall, was 2 inches at Harrisburg, and 4 inches in Allentown. The Report indicated that "most of this snow was from the events from earlier in the month[;] however, about one half to one inch of new snow occurred by about 8 a.m. on the 26[th]." *Id.*

> It is probable the meteorological conditions at Sinking Springs, Pennsylvania[,] around 8:20 a.m. of January 26, 2011[,] were approximately as follows:
>
> …
>
> About 4 inches of snow/ice on unplowed and untreated surfaces….

*Id.* (emphasis in original). Based upon the above evidence of generally slippery conditions existing at the time of Mr. Lockman's fall, we discern no error in the trial court's application of the "hills and ridges" doctrine.

Where generally slippery conditions prevail in the community, to recover for a fall on an ice or snow covered walkway, a plaintiff must prove that (1) snow and ice had accumulated on the walkway in ridges or

- 7 -

elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) the property owner had notice, either actual or constructive, of the existence of such condition; and (3) it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. *Heasley v. Carter Lumber*, 843 A.2d 1274, 1277 (Pa. Super. 2004).

In his deposition, Mr. Lockman testified that on the day of the fall, he left his apartment at about 8:15 a.m. N.T., 3/10/14, at 16. Mr. Lockman stated that he stepped out onto his porch area, which he had cleared of snow that morning with a shovel and rock salt. *Id.* at 17, 19. When he stepped onto the sidewalk, Mr. Lockman testified, "[w]hat I saw was a sidewalk that wasn't properly cleared. And I saw snow and ice. I saw ice from a previous storm and I saw a light coating of snow from the storm that was currently occurring." *Id.* at 20 (emphasis added). According to Mr. Lockman, "there were patches of ice spots on the sidewalk." *Id.* at 27. Mr. Lockman described the ice patch as having "some depth to it[,]" and was "at least six inches long and … a portion of an inch thick." *Id.* at 31. The following discussion then took place:

> Q. [Defendants' counsel]: … Was this ice flat? I don't mean whether it was level or—I just mean was it flat, whether it's on a—was the ice flat?
>
> A. [Mr. Lockman]: … I mean it was somewhat raised because of its depth, but I mean, you know-

Q. Well, that's what I'm trying to get away from. I understand that it's raised above the sidewalk because it's on top of the sidewalk.

A. Uh huh.

Q. I understand that. What I'm asking about was the ice itself—was the surface—the top surface of the ice basically flat?

A. I would say it was relatively flat.

**Q. … So there weren't any bumps and hills and ridges in this ice?**

**A. Not that I could see.**

*Id.* at 31-32 (emphasis added).

In her deposition, Ms. Harold testified that she telephoned Mr. Lockman following the incident. N.T., 7/2/14, at 14. According to Ms. Harold, Mr. Lockman said "there was snow on [the sidewalk] and that's why he fell." *Id.* Ms. Harold confirmed on her incident report that "[t]here was about 2 inches of snow that started early that morning on 1/26/11. Maintenance started removing snow around 10. Maintenance started at 10 a.m. because the amount was insignificant." *Id.* at 15.

In its Opinion, the trial court concluded that the Lockmans' evidence, as a matter of law, was insufficient to overcome the "hills and ridges" doctrine:

> [The Lockmans] contend that the ice Mr. Lockman slipped on was from a previous snow storm that was not cleared. Even if the subject ice was left over from a previous storm, Mr. Lockman testified that upon looking back at the ice he fell on, he observed that patch of ice as being "relatively flat," and that there were not "bumps, hills or ridges" in the ice. [N.T., 3/10/14,] at 33.

- 9 -

Mr. Lockman also testified that the irregular but somewhat circular patch of ice was about six inches wide and less than an inch thick. *Id.* at 31-32. Given Mr. Lockman's testimony concerning the specifications of the ice patch, coupled with the lack of any contradictory evidence about the specifications of that ice patch, [the court] finds that the ice patch upon which Mr. Lockman slipped on was, by his own description, less than an inch thick and flat[,] with no "bumps, hills, or ridges." It was therefore, by Mr. Lockman's own admission, not of a size and character which would constitute a dangerous condition under the hills and ridges doctrine[,] as interpreted by the Courts of this Commonwealth.

Trial Court Opinion, 2/6/15, at 8. We agree with the sound reasoning of the trial court, as set forth above, and affirm on the basis of its reasoning with regard to the Lockmans' claim. *See id.*

We therefore affirm the Order of the trial court, which entered summary judgment against the Lockmans and in favor of Defendants.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015

- 10 -